### CAMPBELL v. CUMMER-DIGGINS CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—COMPENSATION, BASIS OF AWARD.

  In proceedings under the workmen's compensation act, where the evidence is undisputed that for four years immediately preceding his injuries deceased had worked as a carpenter, but there was no evidence upon which to base a finding of his average daily wage or of the average annual earnings of carpenters in that vicinity, an award of compensation under the 300-day rule, based upon the earnings of deceased for the six weeks he was in the employment of defendant, *held*, erroneous, and cause remanded for further proceedings.

Certiorari to Industrial Accident Board. Submitted January 29, 1919. (Docket No. 23.) Decided April 3, 1919.

Jennie Campbell presented her claim for compensation against the Cummer-Diggins Company for the accidental death of her husband in defendant's employ. From an order awarding compensation, defendant brings certiorari. Reversed, and remanded.

*Fred C. Wetmore,* for appellant.

*Gaffney, Miltner & Millington,* for appellee.

OSTRANDER, J.   The injury was received in November, 1916, and the claimant's decedent died as a result thereof.   The parties agreed that compensation should be paid the claimant at the rate of $6.25 a week for 300 weeks.   This agreement being submitted to the industrial accident board, they declined to approve it. There was an arbitration, and an award of $7.93 per week was made.   This award was affirmed by the full board.   Whether it is the proper award is the only question involved.   The board found:

"(A) That Edward Campbell, the deceased employee, was not working in the employment in which he was injured for practically or substantially the whole of the year immediately preceding his injury; and that the compensation in this case should not be computed under the first classification mentioned in the *Andrejwski Case.*

"(B) That Edward Campbell, the deceased employee, had not worked in the employment in which he was working at the time of the accident, either for the respondent employer or any other employer, during substantially the whole of the year immediately preceding his injury.

"(C) That during a substantial portion of the year immediately preceding the injury which caused the death of Edward Campbell he was working for himself; and that the record does not show what his earnings were when he worked for himself.

"(D) That this case is not a case in which none of the first three classifications mentioned in the *Andrejwski Case* can reasonably and fairly be applied; and that it does not fall within the fourth classification mentioned in said case.

"(E) That this case does fall within the so-called 'three hundred day rule' contained in the statute prior to the amendment which took effect August 10, 1917; and that the proper method of arriving at compensation in this case is to multiply the daily wage by three

hundred (300), divide that by fifty-two (52) to get the average weekly wage, and then divide the average weekly wage by two (2) to get the rate of compensation.

"(F) That the daily wage as agreed upon at the arbitration was two dollars and seventy-five cents ($2.75) ; and that three hundred (300) times two dollars and seventy-five cents ($2.75) is eight hundred and twenty-five dollars ($825.00) ; and that one-fifty-second (1-52) of eight hundred and twenty-five dollars ($825.00) is fifteen dollars and eighty-six cents ($15.86) which is the average weekly wage the injured employee was receiving at the time of his injury and death; and that one-half (½) of that is the sum of seven dollars and ninety-three cents ($7.93), which is the proper compensation rate in this case."

It will be perceived that in applying the 300-day rule the board took no account of the *average* daily wage of the claimant's decedent, or of the average annual earnings of carpenters, but took account only of the wages he was receiving at the time he was injured, and for six weeks prior thereto, from the respondent. The record does not show any agreement at the arbitration, or elsewhere, as to the daily wage except for the period named. It is undisputed that when he was injured and for four years immediately preceding that time claimant's decedent had no other employment than that of carpenter, unless it should be said that while performing certain contracts he is said to have made he was not employed as a carpenter. It, of course, is immaterial how many employers he had during the last or any year if his employment was the same, viz., that of carpenter. The record affords no information upon the subject of his contracts for the year preceding his death; indeed, it is not clear that during that year he made and performed any contract. The man who worked with him for the last four years testified:

"We took contracts but we didn't contract very

steadily. We would take a building by the job and do that and maybe the next one would be by the day, and that is the way we did."

The claimant testified:

"He was employed during the last four or five years before his death at carpenter work and contracting."

The record further shows, without dispute, that carpenters, in Cadillac, where the deceased lived, work all the year at their employment if they can find work to do, but that in the winter season outside work is not generally practicable. This may be said to be the rule in this latitude. Two months or more in the winter are dull months for those in the building trades, although it is common knowledge that inside finishing and repairing of buildings may be and is carried on during the winter. It is a fair inference from the testimony that in Cadillac carpenters are usually idle for the most part for two or more months in the winter.

Findings A, B, and C of the board, so far as they relate to employment, rest upon the testimony referred to. In any event, there is none which contradicts it. The record shows, too, by the testimony of the man who worked with him that during the last four years before the injury occurred "the rate of wages paid was thirty cents and ten hours constituted a day's work."

The findings A and B are not supported by testimony because the testimony does not show, and there is none supporting the inference, that the deceased was not working substantially the whole of the year preceding the injury in the employment (carpenter) in which he was working when injured. The finding C is also unsupported except as to the fact that during a substantial portion of the year immediately preceding the injury the deceased was working for himself.

205—Mich.—28.

What is the meaning of that part of finding C which reads:

"That during a substantial portion of the year immediately preceding the injury which caused the death of Edward Campbell he was working for himself?"

If it means that he was working by the job, and not by the day, the testimony does not support the finding; because, as has been pointed out, there is no testimony from which it can be found what, if any, portion of the time he was employed in doing work by the job.

We think the rule generally to be applied in cases like this is the one first laid down in the statute, namely, that the fifty-second part of the average annual earnings is the average weekly wages. One may be forced to apply the fourth rule—see *Andrejwski* v. *Wolverine Coal Co.*, 182 Mich. 298 (Ann. Cas. 1916D, 724)—because none of the others can be reasonably applied. It appears that claimant's decedent here sometimes took a building by the job. The natural inference from this language, and perhaps the necessary one, is that he furnished the materials as well as labor for a building. But, as has been pointed out, the testimony does not show whether a large or a very small proportion of the time was employed in job work, and does not show with certainty that during the last year any jobs were taken.

The statute, as we said in *Andrejwski* v. *Wolverine Coal Co.*, "did in fact make provision which applied to all cases of such injuries and deaths occurring in all employments."

The committee of arbitration and the industrial accident board act, necessarily, upon the evidence produced to them. We realize the difficulty which arises in cases like this one in applying the statute rule. But we think that here it is a matter of failure of proof

and of proof which the respondent company is not in a position to produce. The rules of the statute are based upon the discovery of the amount of average annual earnings of the injured employee. The testimony does not furnish a complete basis for making this discovery. The fourth rule is:

* * * "In cases where the foregoing methods of arriving at the average annual earnings of the injured employee cannot reasonably and fairly be applied, such annual earnings shall be taken at such sum as, having regard to the previous earnings of the injured employee, and of other employees of the same * * * class, working in the same * * * employment, in the same * * * locality, shall reasonably represent the annual earning capacity of the injured employee at the time of the accident in the employment in which he was working at such time." * * * 2 Comp. Laws 1915, § 5441.

What the board did not do was to discover and state the average or any annual earning capacity of the deceased employee, or that of a carpenter working in Cadillac. We are of opinion that from the evidence produced it is not possible to state, with certainty, the average or any annual earning capacity of the injured man, and the necessary evidence is not in the possession of the respondent. There is a failure of evidence for which respondent is not responsible. We agree with counsel for respondent that it is unfair, upon this record,—

"to hold that Mr. Campbell's temporary employment for a period of six weeks by the defendant should automatically put him on a full time basis as to compensation under the statute."

It is not, we think, improper to suggest that probably evidence may easily be produced to show the average earning capacity of a carpenter in Cadillac. It is not unlikely that the witness, Mr. Ready, who worked with the deceased during the last four years

of his life, can, from memory, furnish data from which it can be ascertained whether deceased worked any of the time by the job during the last year; can, in any event, furnish data for ascertaining the average annual earnings of a carpenter in Cadillac. *Engberg* v. *Mining Co.*, 201 Mich. 570.

The award must be set aside and the cause remanded for further proceedings. The costs of this appeal will be evenly divided between the parties.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.