CHARLES JOHNSON, (EMPLOYEE) RESPONDENT, v. CHARLES G. KRUCKEMEYER, (EMPLOYER) AND ZURICH GENERAL ACCIDENT & LIABILITY INSURANCE COMPANY, LTD., (INSURER), APPELLANTS.*—29 S. W. (2d) 730.

St. Louis Court of Appeals. Opinion filed June 24, 1930.

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 3240, p. 1199, n. 29; Statutes, 36Cyc, p. 1129, n. 59; Workmen's Compensation Acts, —CJ, section 80, p. 89, n. 15; section 90, p. 97, n. 30; section 97, p. 100, n. 76; section 109, p. 114, n. 9; section 114, p. 115, n. 37; section 128, p. 124, n. 52; section 131, p. 125, n. 68.

*M. L. Lichtenstadt* and *Hensley, Allen & Marsalek* for appellants.

*Watts & Gentry* and *Arnot L. Sheppard* for respondent.

BENNICK, C.—This is an appeal by the employer and insurer jointly from the judgment of the circuit court affirming an award made by the Workmen's Compensation Commission.

The claimant, a boy fifteen years of age, sustained very severe and permanent injuries to his right leg and ankle on March 30, 1927,

while engaged in the performance of his duties for his employer, Charles G. Kruckemeyer, who operated a machine shop at 1365 Cockrill street, in the city of St. Louis. He had been in Kruckemeyer's employ for six or seven months when the accident occurred, and was working as an apprentice or machinist's helper, for which he was receiving a wage of $8 a week. It appears, however, that although he was but a helper or apprentice, he nevertheless performed the same duties for the most part as the adult machinists, and that men doing the same kind of work as he did received from $15 to $30 a week.

There is no controversy about the fact that while the claimant was assisting certain other employees to tilt a machine of some sort so that skids could be removed from under it, the machine was permitted to fall, striking his leg, and inflicting the injuries for which compensation is sought.

Either the employer or his insurer promptly sent the boy to a local doctor for treatment, and he remained under this doctor's sole care until the following November, save for a period of a few weeks during which the services of Dr. Klinefelter, a bone specialist, were also required. It appears that a severe infection developed, and due to the fact that the treatment given by the local physician seemed to them to be inadequate, and that their son's life was in grave danger, the parents requested the employer and insurer to arrange for the services of another physician. When their request was not complied with, they employed Dr. Klinefelter and Dr. Meredith on their own initiative, and the subsequent care of the case was wholly in the hands of the latter doctors.

The commission awarded the claimant compensation for permanent partial disability, at the rate of $12 a week for 85.03 weeks, together with medical aid totaling $520, and embracing the following items: Outside nursing, $42; mother's nursing, $150; Dr. Klinefelter, $200; Dr. Meredith, $78; and bandages and medicines, $50.

Appellants' first two assignments of error may be considered together, namely, that there was not sufficient competent evidence in the record to support the finding of an average wage scale for adults at $18 a week, with a consequent award of compensation to claimant at the rate of $12 a week; or to warrant the making of the award of compensation to claimant for a period of 85.03 weeks.

Section 14b of the act (Laws 1927, pp. 490-522) provides that compensation shall be payable on the basis of 66 2/3 per cent of the average earnings of the employee, computed in accordance with the rules given in section 22, so that if the commission was warranted in taking a wage of $18 a week as the basis for an award, then the allowance to the claimant of compensation at $12 a week was proper.

The latter section sets out in various lettered subsections the method of computation to be followed by the commission in determining the average earnings of the injured employee. Where it is shown that the injured person has been in the employment of the same employer continuously during the year next preceding the injury, subsection a provides that the amount the employee actually received by way of annual earnings shall control. However, if the injured person has not been engaged in the service of the same employer for the full year immediately preceding the accident, subsection c provides that his compensation is to be computed according to the annual earnings of employees of the same class in the same employment.

Now in this case the testimony shows without dispute that at the time his injury was received, the claimant's employment was in machine shop work; that he fell within the classification of an apprentice or helper; and that his own actual rate of pay was $8, or at most $9, a week. It therefore appears that were it not for other provisions of the act, the commission, under section 22c, would have had no option but to have found the claimant's average weekly earnings at $8 or $9 a week, and to have computed his compensation at the rate of $6 a week, which is the minimum provided for in the act.

However, the commission proceeded in accordance with section 22f, and the propriety of its computation of compensation in accordance with the terms of that subsection is directly at issue on this appeal. Section 22f reads as follows:

"In the case of injured employees who earn either no wage or less than the earnings of adult day laborers in the line of employment in that locality, the yearly wage shall be reckoned according to the average annual earnings of adults of the same class in the same (or if that is impracticable then of neighboring) employments."

It is the earnest contention of counsel for appellants that section 22j, rather than 22f, applies in the present case, and that under its terms there was nothing left for the commission to do but to take the sum of $8 or $9 a week as a basic wage, and then to add thereto a reasonable sum in consideration of any anticipated increase in the claimant's earning power which the evidence may have shown, and to determine in this manner the weekly wage to be used as the basis for the award of compensation. Section 22j reads as follows:

"In computing the compensation to be paid to any minor, the increased earning power of such minor until he attains the age of twenty-one years shall be taken into consideration, and in all cases in which it is found by the commission that the employer knowingly employed a minor in violation of the child labor law of this State, fifty per cent additional compensation shall be allowed."

In support of their contention that subsection j, and not subsection f, should have applied in the instant case, appellants argue that the former is a definite and specific provision applying to minors, while the latter is general in its scope; that inasmuch as the former deals with the allowance of compensation to minors in a minute and definite way, it should prevail over the latter, even though it too in some instances would include minors within its terms; and that if subsection f should be held to be the statute applicable to the determination of the compensation to which a minor is entitled, then subsection j would appear to have been an entirely unnecessary and superfluous enactment.

We do not understand how it could have been possible for the Legislature to have been any more specific in declaring its intention about the matter under discussion than it was in the enactment of subsection f. It is there stated in simple and unambiguous language than an injured employee, without regard to his age, who is either paid no wages at all, or is paid less than the earnings of an adult day laborer, shall be paid compensation upon the same basis as an adult who does the same class of work in the same or a neighboring employment. Such provision covers not only minors, but also adults who are paid less than the regular wages which adult laborers receive. Obviously the claimant falls in that class, as the evidence discloses that he was paid less than the earnings of an adult day laborer in the same line of employment in that locality, and even in the identical shop. We see no escape from the conclusion, therefore, that under the definite provisions of subsection f, his compensation should be based upon the average rate of pay of an adult doing the same kind of work that he himself was doing when injured.

Nothing in subsection j militates against this view, but if anything it adds to the force of the conclusion which we have reached. As we read them, the two sections are not contradictory; and in so far as they deal with different features of the same general subject-matter, it is our duty to read them together, and to harmonize them if possible. [Betz v. Columbia Telephone Co. (Mo. App.), 24 S. W. (2d) 224; Sleyster v. Eugene Donzelot & Son (Mo. App.), 25 S. W. (2d) 147.]

We think there can be no question but that subsection f has reference, not only to adults, but also to minors, who, for one reason or another, are being paid less than the wages of an adult engaged in the same line of employment. Consequently, which ever view of the situation be taken, the minimum which can serve as a basis for compensation is the average amount of wages being paid to adults doing the same character of work as the claimant. Under subsection j, however, the commission is authorized to take into consideration

the probable increase in the earning power of a minor until he attains his majority.

This is a very salutary feature of the law. A case may readily be imagined where the testimony would show that the minor claimant was an unusually bright and intelligent person, because of which it might seem reasonably certain that his progress in his work would have been very rapid had not injury befallen him. Under such circumstances the commission would have the right to find that it was highly probable that by the time such minor would have reached his majority, his earning power would have increased to the point that it would be unfair to base his claim for compensation, either upon the wages he then received as a minor, or even upon the wages of an adult who was doing the same character of work in which the minor was then engaged. Under subsection j the commission would be entitled to take all such special and peculiar facts and circumstances into consideration in arriving at the basis for the making of an award, but under subsection f, standing alone, none of such elements could be considered.

In other words, there is nothing in subsection j which prohibits or restrains the commission from basing the minor's compensation upon the wages paid to an adult in accordance with the provisions of subsection f, and it would seem, therefore, that the former subsection is merely supplementary to the latter, and in nowise contrary thereto. Otherwise stated, subsection f may be considered as establishing a minimum basis for the compensation to be paid to a minor in any event, whereas subsection j fixes the maximum basis for compensation, if such special and extraordinary facts and circumstances are present in the case as to warrant its application. Our conclusion is, therefore, that the view which the commission took of the law in arriving at the amount of compensation now in controversy was entirely proper.

But beyond this, appellants argue that there was not sufficient competent evidence adduced to warrant the finding that the average wage of an adult laborer doing the same kind of work as claimant was $18 a week. Their point is that the act calls for compensation on the basis of average annual earnings, and that to warrant an award there must be competent proof of the average amount paid annually to an adult employee of the same class in the same employment during the period of one year next preceding the injury.

While it is true that there was no definite statement from any witness as to the sum total of the average annual earnings of an employee, yet there was definite proof as to the average weekly earnings, and with this as the basis, the determination of what the annual earnings would be is but a matter of computation. After all, the act calls for the payment of compensation upon a weekly

basis, in view of which it was necessarily incumbent upon the commission to determine the average weekly wage as the basis for its award. In doing so, it found that the average period of service was sixty hours a week; and while the evidence would have warranted a finding that an adult laborer, doing the same kind of work as the claimant performed, received as much as fifty cents an hour, yet there was evidence to support the finding that only thirty cents was the average hourly wage, in consequence of which the award of the commission had sufficient competent evidence to support it, and any cause for disappointment would appear to rest with claimant, rather than with appellants, who have greatly profited by the fact that the commission saw fit to choose the lesser figure.

As to the charge that the award of compensation for a period of 85.03 weeks was excessive and not supported by the evidence, we observe that the commission based its award upon permanent partial disability which it found to exist in the right leg and ankle, as follows: Loss of thirty per cent of flexion and extension, sixty per cent inversion and eversion, forty per cent in strength, and twenty per cent by reason of bowing; three-eighths of an inch shortening; in the large toe, a loss of twenty per cent flexion, extension, and strength in all phalanges; in the first toe, a corresponding loss of fifteen per cent; and in the second toe, a corresponding loss of ten per cent.

In section 17, which deals with compensation for permanent partial disability, it is provided that for permanent injuries other than the forty-six definite injuries specified, compensation shall be paid for such periods as are proportionate to the relation which the particular injury bears to the similar injury specified. For the loss of a leg between the ankle and knee, compensation is provided for a period of 155 weeks; and it is the contention of appellants that the award in this instance for a period of 85.03 weeks, which they say is equivalent to a finding by the commission that the injury was more than one-half as serious in its effects as the amputation of the leg between the ankle and knee, was not a reasonable or a permissible finding under the evidence.

The finding of the commission appears to have been made in accordance with a systematic method of determining the proportionate loss sustained, which the commission had theretofore adopted, and had published in the form of bulletins for the use and information of the general public. Obviously it would have been impossible for the Legislature in framing the act to have fixed a definite period for the payment of compensation for each and every kind of injury which might arise; and when it provided that for permanent injuries other than those definitely specified, compensation should be paid for such a period as was proportionate to the relation which

the particular injury bore to some injury specified, the effect was to vest the commission with a discretion in the matter of determining the proportion as nearly as might be. Here the evidence shows, and the commission found, that the functions of the claimant's foot, ankle, and leg were left seriously impaired; and while it is undoubtedly true that the period for which compensation is to be paid borders on the extreme, yet we cannot say that the finding of the commission was so unreasonable, arbitrary, and without support in the evidence, as to warrant interference at the hands of an appellate court.

Finally appellants insist that the entire award for additional medical aid was unauthorized, for the reason that the claimant failed to procure a special order of the commission for additional or substituted medical treatment. The propriety of this item or portion of the award is to be determined from the provisions of section 13 of the act, where it is provided that in addition to all other compensation, the employee shall receive, and the employer shall provide, such medical, surgical, and hospital treatment, including nursing, ambulance, and medicines, as may reasonably be required for the first sixty days after the injury or disability, to cure and relieve from the effects of the injury, not exceeding in amount the sum of $250; that thereafter such additional similar treatment shall be provided, within one year from the date of the injury, as the commission, by special order, may determine to be necessary; that if the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense; and that if it be shown to the commission that the requirements are being furnished in such manner that there is reasonable ground for believing that the life, health, or recovery of the employee is endangered thereby, the commission may order a change in the physician, surgeon, hospital, or other requirement.

We cannot read the above section of the act as indicating other than that the Legislature has laid upon the employer the absolute duty to provide medical attention for the first sixty days in case of an injury to his employee, and that, along with the imposition of such duty, it has given the employer the privilege of choosing the physician or other agency to render the service. This right and obligation of the employer is subject, however, to the right of the employee to select his own physician, surgeon, or other requirement; but if he sees fit to exercise this right, he does so at his own expense, whereas if he accepts the agencies furnished by his employer, the latter alone is liable for the expense thereof for the first sixty days, in a sum not exceeding $250, in which event the expense would be no part of the employee's claim for compensation, not having been incurred at his instance, and he not being obligated therefor.

This, of course, is but a very general interpretation of the statute, and is not intended to deal with the question of the giving of reasonable notice of the injury to the employer, and reasonable time in which to comply with his duty under the statute; with the degree of active effort required on the part of the employer to bring his injured employee the required relief; or with the right of the employee to have emergency treatment, chargeable against his employer, in the *interim* between the time of the injury and reasonable time for the employer to act. Indeed there will undoubtedly be numerous other questions arising in the future which will call for a more special interpretation of the section than we have thus far given, but such situations are not now before us, and we mention such other contingencies only for the purpose of indicating that what we say herein is limited strictly to the facts now presented to us, and does not purport to serve as a construction of the statute for any and all circumstances.

Thus far we have considered the mutual rights and obligations of the employer and employee only during the period of sixty days following the injury. In every instance the employer's obligation does not end with the sixty-day period, however, for if the nature of the case is such as to warrant the giving of additional treatment within one year from the date of the injury, the commission, having determined such additional treatment to be necessary, may, by special order, require the employer to provide it. Furthermore, if at any time, whether within or after the sixty-day period, it be shown to the commission that the obligation of the employer is being so inadequately discharged as to endanger the life, health, or recovery of the employee, the commission has full authority to order a change in the nature of the service furnished.

In other words, if the injured employee at any stage of the case sees fit to incur additional expense, or to have a change in the identity of the service, and desires to have the same charged against his employer, it is necessary that he procure a special order therefor from the commission, such special order to be made before the expense is incurred or the change made, and not afterwards. We say this for the reason that the act speaks of additional treatment which the commission, by special order, may determine "to be necessary," and not "to have been necessary," and does not contemplate that an award may be subsequently entered so as to be retroactive, and have the effect of relating back to the time when it was first found that additional treatment would be required. [State ex rel. v. District Court, 134 Minn. 16, 158 N. W. 713.]

We cannot avoid the conclusion, therefore, in which counsel for all parties join, that under the plain language of section 13, and with full regard had for each and every portion thereof, when the

claimant elected to procure medical aid in addition to that furnished by the employer (for which incidentally the latter voluntarily paid out the sum of $651.25), without first having procured a special order therefor from the commission, he must necessarily be held to have selected his own physician, surgeon, or other requirement at his own expense, absent a waiver on the employer's part. This conclusion touches each and every item of the amount allowed for medical aid, irrespective of when the expense was incurred, since there is no pretense that any special order from the commission was ever sought or obtained therefor. [American Sash & Door Co. v. Industrial Commission, 326 Ill. 48, 156 N. E. 776; Indiana Liberty Mutual Insurance Co. v. Strate, 83 Ind. App. 493, 148 N. E. 425; Southern California Edison Co. v. Industrial Accident Commission (Cal. App.), 275 Pac. 958.]

Counsel for the claimant insist, however, that there was a waiver shown, and that the employer, by his assent to the securing of additional treatment, voluntarily and intentionally relinquished his right to stand upon the letter of the statute, limiting his obligation to the payment of a sum not exceeding $250 for services furnished by agencies of his own choosing for the first sixty days, and discharging him from any obligation whatsoever beyond this period and within one year, in the absence of the making of a special order by the commission.

Opposed to this idea, appellants argue in the first instance that there was no substantial evidence adduced supporting the claim of waiver, and further, that any act on the part of the employer alone, unassented to by his insurer as the one directly and primarily liable, could not operate as a waiver, since so to hold would be to infringe upon the rights of the insurer, which the law will not permit.

Looking to these contentions in their inverse order, we are persuaded that the conduct relied upon as establishing a waiver need not be laid at the door of the insurer as well as that of the employer to entitle the claimant to avail himself of the point. In one view of the matter the act is contractual, and the contract is one between the employee and his employer. Furthermore it is upon the employer that the act places the obligation to furnish medical aid, as we have heretofore shown; and even though the liability of the insurer under its policy is primary and direct, yet the policy is required by section 28 to be drawn in accordance with the provisions of the act, and to contain an agreement that the insurer accepts all of the provisions of the act, one of which is the provision now under consideration, that the employer shall furnish the necessary medical aid. It is the entire liability of the employer under the act which the policy is required to cover, however such liability may be held to attach, and if the employer alone may be permitted to waive

a given provision of the act, then the insurer is liable in the manner and to the extent provided by the act, regardless of whether it, as a separate and distinct entity, participated in the waiver.

As to what may constitute a waiver, the cases from other jurisdictions, based upon kindred statutes, hold that if the employer directs the employee to procure the services of a physician or to go to a hospital, he may not thereafter avoid such doctor and hospital bills upon the theory that it was his own right under the act to make the selections (American Sash & Door Co. v. Industrial Commission, supra; Myers v. Industrial Accident Commission, 191 Cal. 673, 218 Pac. 11; Massachusetts Bonding & Insurance Co. v. Pillsbury, 170 Cal. 767, 151 Pac. 419); and indeed, that if the employer, more than sixty days after the injury, supplies, or expresses his willingness to supply, his injured employee with further medical treatment, such action is tantamount to a consent to an indefinite extension of the sixty-day period, and constitutes a waiver of the employer's right to object to the power of the commission to allow the particular expense incurred by the employee after such period. [Union Iron Works v. Industrial Accident Commission, 190 Cal. 33, 210 Pac. 410.]

Here the claimant's only contention seems to be that there was a waiver on the employer's part respecting the employment of Dr. Klinefelter, who appears to have entered the case about May 5, 1927. Just how the doctor's services happened to be procured is not clear from the record before us. Certain evidence indicates that he was employed solely on the initiative and at the instance of the claimant's parents, in which event there could be no waiver of the employer's right to object to the payment of his bill. There is other evidence, however, that the claimant's mother, despairing of the life of her son, consulted with one Ditto, a man in the service of the employer, relative to the securing of another physician, and that after certain consultations between Ditto and the insurance company, which appear to have borne no fruit, Ditto took the matter up with the employer, who agreed to the proposal. It further appears that the employer's wife knew of her husband's assent; that she was present at the hearing before the commission, though not called as a witness; and that she would have corroborated the testimony of the claimant's mother, if she had been put upon the stand.

Certainly with the evidence in apparent dispute upon the point, and with no finding of fact made by the commission, we may not hold as a matter of law upon the record before us that a waiver was shown so as to warrant the allowance of Dr. Klinefelter's bill as a part of the claim for compensation. That matter might be more fully gone into, however, if a new hearing were to be had before the commission.

It is axiomatic in appellate procedure that a case should not be reversed without remanding, unless the evidence has been fully presented, and the appellate court is convinced that the facts are such that a recovery cannot be had. [Finnegan v. Missouri Pacific R. Co., 244 Mo. 608, 149 S. W. 612; Hummel v. American Manufacturing Co. (Mo. App.), 279 S. W. 202; Thomas v. Wells (Mo. App.), 299 S. W. 72; R. D. Kurtz, Inc. v. Field (Mo. App.), 14 S. W. (2d) 9.] Here we are not convinced that a waiver as to the item in dispute might not be shown, but the question faces us as to our power to apply the stated rule to a case arising under our compensation act.

By section 44 of the act, the appellate court is empowered, among other things, to remand for a rehearing, being limited in its consideration to four stated grounds, one of which is that there was not sufficient competent evidence in the record to warrant the making of the award. As the record now stands, there was not sufficient competent evidence to justify the allowance of the item under discussion, but the deficiency may possibly be supplied upon a rehearing. It would seem, therefore, that we have the authority to remand the case so that the claimant may be afforded the opportunity to substantiate his claim, if such is possible; and incidentally the courts of other states have so construed their own acts, many of which contain provisions of much the same import as our own. [Cormican v. McMahon, 102 Conn. 234, 128 Atl. 709; Laskowski v. Jessup & Moore Paper Co., 7 Boyce (Del.) 492, 108 Atl. 281; Peabody Coal Co. v. Industrial Commission, 289 Ill. 330, 124 N. E. 603; Campbell v. Cummer-Diggins Co., 205 Mich. 430, 171 N. W. 395; Vincent v. Taylor Brothers, 180 App. Div. 818, 168 N. Y. S. 287; Stimal v. Jewett & Co., 198 App. Div. 427, 190 N. Y. S. 889; Associated Employers' Reciprocal & Missouri Valley Bridge Co. v. State Industrial Commission, 88 Okla. 80, 211 Pac. 491; Inland Steel Co. v. Lambert, 66 Ind. App. 246, 118 N. E. 162.]

No fault is to be found with the award of compensation proper at the rate of $12 a week for 85.03 weeks, as we have heretofore indicated; but the award for medical aid, totaling $520, may not be upheld upon the record as it now stands. Accordingly, the commissioner recommends that the judgment of the circuit court be reversed, and the cause remanded, with directions to the circuit court to remand the case in turn to the commission for further proceedings not inconsistent with the views herein expressed.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly, reversed, and the cause remanded, with directions to the circuit court to remand the case to the commission for further proceedings not inconsistent with the views herein expressed. *Haid, P. J.,* and *Becker* and *Nipper, JJ.,* concur.