[1] The employer and its insurer appeal from a judgment of the circuit court affirming an award of the Industrial Commission. The Commission awarded compensation for 72.175 weeks at $20 a week or a total of $1443.50 for an injury to the elbow and shoulder of the claimant.
[2] Ludwig, who had been employed by the Columbia Brewing Company for about a year and a half, was required to wash out a large metal tank as part of his work. In order to clean the tank it was necessary to crawl through an opening and then to scrub the inside of the tank free of any residue left by the brewing process for which it was used. While doing this work he slipped and fell striking his left elbow and shoulder. His elbow began to hurt and he noticed a sizable bump on it so he went to the company first aid room and was sent to a doctor by the name of Reuter.
[3] Dr. Reuter treated him by puncturing the swelling and draining it. This was done on four occasions by the doctor from July 11, 1946, to August 14, 1946, during which time the elbow remained swollen. A day or two after the accident plaintiff's shoulder began to hurt and get stiff. He also lost strength in his left hand. Dr. Reuter told the plaintiff that he could do nothing more for him without surgery and plaintiff then went to his own physician, Dr. Doubek, who treated the arm with heat and was doing so at the time of the hearing.
[4] The plaintiff worked for the defendant employer after his fall until December of 1946 doing lighter work than he had previously done but after being laid off in the latter part of December he was unemployed until September of 1947. He stated that he could not work because of his left arm. In September he obtained clerical work at which he was engaged at the time of the hearing.
[5] Plaintiff stated that his left shoulder was still stiff and pained him when he raised his arm and that he still had a loss of gripping power in his left hand. Prior to his fall he had no pain in his left arm.
[6] Dr. Doubek testified that the plaintiff came to him in the latter part of August, 1946, suffering from a "hematoma and swelling of the olecranon process of the ulna". This swelling of the elbow joint caused pain extending upward to the shoulder. The shoulder was stiff but there was no swelling there. The doctor bandaged the arm, put it in a sling, and gave the patient occasional heat treatments and *Page 491 
some internal medicine. The witness stated that the plaintiff was suffering from "arthritis, synovitis, myositis and neuritis", which were defined respectively as inflammation of the bone or joint, inflammation of the membrane of the joint, inflammation of the muscles, and inflammation of the large nerve of the arm. It was the opinion of Dr. Doubek that those conditions would be permanent and that they caused a 50 per cent loss of use of the arm and shoulder. He later stated that the plaintiff suffered a 50 per cent disability at the elbow and 30 per cent at the shoulder.
[7] Dr. O. P. Hampton testified that he examined the plaintiff on August 15, 1947, on behalf of the employer, and found a 10 per cent to 15 per cent limitation of motion in the left shoulder and evidence of pain in the elbow but no limitation of movement there. This witness stated that X-rays taken showed a slight irregularity in the elbow but nothing abnormal.
[8] It was agreed that claimant sustained the accident and that his claim had been filed in time and that the compensation rate was established at $20 a week. Upon this state of facts the Commission found that there had been a compensable accident and the "exact nature of any permanent injury: 25 per cent of left minor elbow and 15 per cent of left minor shoulder." There was an award of compensation for 72.175 weeks. This finding of facts and award follows that made by the referee.
[9] The only point raised by this appeal is that the award of 72.175 weeks of compensation is an wholly arbitrary figure not comporting in any way with the injuries found by the Commission to have been sustained. Section 3705, R.S. 1939, Mo. R.S.A § 3705, provides the method of computing compensation for various specified injuries that might occur to an employee causing permanent partial disability, and for injuries not specified it provides: "For permanent injuries other than those above specified, the said compensation shall be paid for such periods as are proportionate to the relation which the other injury bears to the injuries above specified, but no such period shall exceed four hundred weeks."
[10] Among the injuries specified in the schedule is the loss of a minor arm at the shoulder for which 212 weeks of compensation is allowed, and 190 weeks of compensation are allowed, by the statute for the loss of a minor arm at the elbow. The section also provides: "For the permanent partial loss of the use of an arm, hand, thumb, finger, leg, foot, toe or phalange compensation shall be paid for the proportionate loss of the use of such arm, hand, thumb, finger, leg, foot, toe or phalange."
[11] It is not contended that the evidence was insufficient to support the Commission's findings and no such contention could stand for the findings are supported by the medical testimony and the claimant's statement. There was evidence that the shoulder was permanently disabled in that the arm could not be moved to its normal extent and there was evidence sufficient for the referee to have found that the elbow was injured to the percentage stated. Both of these injuries relate solely to the use of the left minor arm for there was no evidence that the injury to the shoulder affected any other portion of the body. Both injuries mentioned therefore should have been considered as partial permanent disability to the arm and the extent to which the arm was disabled should have been stated. Upon such a finding the proportion that the disability stated bore to the scheduled compensation for the loss of the arm would be the amount of the award. Darghe v. Blackburn Const. Co., Mo.App., 53 S.W.2d 1088; Bumpus v. Massman Const. Co., Mo.App., 145 S.W.2d 458; Johnson v. Kruckemeyer, 224 Mo.App. 351, 29 S.W.2d 730.
[12] The appellants complain that no combination of the injuries scheduled under Section 3705, involving 15 per cent of an arm at the shoulder and 25 per cent of an arm at the elbow works out to 72.175 weeks of compensation. They assert that considering "the man as a whole", and relating the 72.175 weeks of compensation on a percentage basis to the 400 weeks allowed as a maximum, the award amounts to 18-4/100 per cent. It is pointed out that the Commission does not purport to find that the *Page 492 
claimant as a useful individual is disabled 18-4/100 per cent and that no evidence on that question was presented.
[13] It is true that the findings should be of such clarity that the parties can determine from them the basis of the award. However, we cannot go to the 400 weeks maximum allowed by statute for unspecified injuries as the injuries complained of are specified. The loss of a minor arm at the shoulder calls for 212 weeks of compensation and 72.175 weeks is 34-4/100 per cent of 212. The Commission could have found that 15 per cent shoulder disability and 25 per cent elbow disability constitute 34-4/100 per cent disability to the whole arm.
[14] A similar situation was presented in the case of Johnson v. Kruckemeyer, 224 Mo. App. 351, 29 S.W.2d 730, 732. This case had to do with a leg injury and the Commission found as disability: "Loss of 30 per cent. of flexion and extension, 60 per cent. inversion and eversion, 40 per cent. in strength, and 20 per cent. by reason of bowing; three-eighths of an inch shortening; in the large toe a loss of 20 per cent. Flexion, extension, and strength in all phalanges; in the first toe a corresponding loss of 15 per cent.; and in the second toe a corresponding loss of 10 per cent."
[15] The award in that case was 85.03 weeks which was equivalent to over half the amount scheduled to be allowed for loss of the leg between the ankle and the knee. This court stated: "The finding of the commission appears to have been made in accordance with a systematic method of determining the proportionate loss sustained, which the commission had theretofore adopted, and had published in the form of bulletins for the use and information of the general public. Obviously it would have been impossible for the Legislature in framing the act to have fixed a definite period for the payment of compensation for each and every kind of injury which might arise, and, when it provided that, for permanent injuries other than those definitely specified, compensation should be paid for such a period as was proportionate to the relation which the particular injury bore to some injury specified, the effect was to vest the commission with a discretion in the matter of determining the proportion as nearly as might be."
[16] Again in the case of Harbour v. Gardner, Mo.App., 38 S.W.2d 295, 297, where the Commission's findings were limited to multiple injuries to a leg rather than to the total disability caused by the injury, we stated: "The Workmen's Compensation Act, however, does give and allow the commission fixing such award large discretionary powers in many instances, and particularly in case of an injury of this kind and character."
[17] In both of these cases the Commission used a schedule it had published as a guide to fixing the amount of the award. We held that it was proper to use such schedule and the approval of it was predicated upon the Commission's statutory authority to exercise its discretion in fixing the award. As stated in Johnson v. Kruckemeyer, the statute could not list all of the injuries that might conceivably happen by accident and it follows that the Commission could not schedule all of such injuries. They are free to exercise the discretion with which they have been vested and despite the deficiencies noted we must presume that the Commission found the facts necessary to support the award.
[18] Another reason that the award must remain undisturbed on this appeal is that the appellant failed to ask the Commission for any clarification of its findings or any additional findings of facts. Such a request must be made if either party feels that the findings are inadequate and the request cannot be made for the first time on appeal.
[19] Our Supreme Court stated in State ex rel. Probst v. Haid, 333 Mo. 390, 62 S.W.2d 869, loc. cit. 873. "Undoubtedly, if any party feels that the commission's findings of facts are not clear, leave the reason for its conclusion and award in doubt, or should be amplified for any other reason, he should ask the commission to modify them by making additional findings instead of complaining in the appellate court *Page 493 
that findings of fact, which are not inconsistent with the result reached, do not contain a finding concerning all disputed questions of fact which must necessarily have been decided in order to make and support the award."
[20] It is the recommendation of the Commissioner that the judgment of the circuit court affirming the award of the Industrial Commission be affirmed.