258 S.W.2d 262 (1953)
CEBAK
v.
JOHN NOOTER BOILER WORKS CO.
Nos. 28605, 28609.
St. Louis Court of Appeals. Missouri.
May 19, 1953.
Rehearing Denied June 16, 1953.
*263 R. C. Reis, St. Louis, for respondent-appellant Joe Cebak.
Renderer, Nolde & Kleinschmidt, John H. Nolde, and Ralph C. Kleinschmidt, St. Louis, for appellant-respondent John Nooter Boiler Works Co.
HOLMAN, Special Judge.
In this proceeding under the Workmen's Compensation Law both the employee, Joe Cebak, and the employer, John Nooter Boiler Works Company, have appealed from the judgment of the Circuit Court affirming the final award of the Industrial Commission.
There is no dispute about the fact that the employee sustained an accidental injury on October 7, 1947, while working for the employer. It further appears clear that he has been totally disabled since July, 1949, except for a period of five days that he worked in the fall of that year. The controversy arises principally as a result of the contention of the employer that Cebak's disability was not caused by the accident.
The Industrial Commission made a temporary award on January 4, 1951, allowing the employee compensation for temporary total disability and this compensation was extended by another temporary award dated April 4, 1951. The employer did not comply with either of these awards. After a third hearing the Commission made its final award on February 28, 1952. Temporary total disability was allowed at the rate of $40 per week for 125 6/7 weeks and at the rate of $20 per week for not more than 264 1/7 weeks during the continuance of such disability. Medical expenses in the sum of $344.25 were allowed by the Commission, but it refused to require the employer to pay for medical aid in the sum of $949.52 which had been procured by the employee more than 90 days after the injury and for which no special order of the Commission was obtained. Each of the parties appealed from this award to the Circuit Court.
At the time of his injury Cebak was working as a helper for Elder Beck, a welder. A piece of the welding machine weighing from three to five pounds fell a distance of from six to eight feet and struck him on the top of his head. He was taken to the nurse and received medication. The next day the employer sent him to Dr. Demko for examination and treatment. From the time of the accident until the date of the last hearing Cebak complained of pain in his head radiating from the front toward the back. He further testified that he had a whistling in the temporal region; was shaky and nervous; was frequently sick at his stomach and that his neck and left shoulder pained him. At various times he also complained of dizziness, loss of vision and hearing and weakness in his left arm and hand.
From the date of the accident until January, 1949, the employer sent Mr. Cebak to a number of doctors for examination and treatment but he obtained little, if any, relief from the pain he complained of. Thereafter the company refused further medical aid and he has continued to go to various physicians and specialists of his own choosing in his search for a cure or at least relief from the pain.
*264 Except for 10 weeks (for which he received compensation) the employee continued to work from the time of the accident until July 11, 1949. As already indicated, he has received treatment from various physicians from the time of his injury and has been disabled almost continuously since July, 1949. It appears from the evidence that his health was satisfactory prior to the accident and that he had always worked steadily.
Employee was a patient in Desloge Hospital from November 11, 1949, until January 13, 1950. There he was examined by a number of physicians and given various laboratory and clinical tests and treatment. While in the hospital and again on July 25, 1950, he was examined by Dr. Robert W. Woolsey, a neuro-surgeon. Dr. Woolsey testified that he thought the pain was due to a compression of the sensory roots of the first and second cervical nerves which resulted from the injury the employee had received. He found that when drugs were injected into the cervical area that Mr. Cebak would experience temporary relief from the pain in his head. He has received these injections with some regularity since that time. Dr. Woolsey suggested that the patient might receive permanent relief from the pain as a result of an operation severing the cervical nerve roots. The employee was willing to submit to the operation but it was never performed. Other neurologists who testified did not agree with Dr. Woolsey upon the advisability of this procedure. Dr. Woolsey also testified that the employee was unsteady, nervous and neurotic. He was of the opinion that this condition had an organic background dating back to the injury and partially resulted from the fact that the patient had undergone an extended period of illness and pain without being able to obtain a cure.
At the second hearing Dr. Frank Palazzo testified for the employee and related that he had given him a very thorough examination, including many laboratory tests. His diagnosis did not conflict with that of Dr. Woolsey, but contained additional findings. He was of the opinion that the pain was due to cervical occipital neurology and that Mr. Cebak was also suffering from Parkinsonism; that there is a causal connection between the trauma and this Parkinson's disease; that the employee is disabled as a result of the injury.
Dr. Robert Mueller, a psychiatrist and neurologist, testified for the employee at the third hearing. He examined Mr. Cebak on October 29 and November 30, 1951. He was of the opinion that the major cause of the disability was the neurosis, which condition was started by the injury. His conclusion was that the patient could not be employed at that time and the outlook for the future was very poor.
The employer relied principally upon the testimony of Dr. Walter Moore, a psychiatrist and neurologist, who examined the employee twice in 1949 and again in December, 1951. At the first hearing he stated that the employee had symptoms of Parkinson's disease due to arteriosclerosis; that he found no compression of the sensory nerves in the region of the first and second cervical vertebrae and that the headaches were due to his nervousness. His testimony at the third hearing was that he found no more arteriosclerosis than is commensurate with a man of his age, i. e. 58; that at that time Mr. Cebak had some organic disease of the nervous system as shown by the tremor of the right hand over which he has superimposed a severe neurosis; that the neurosis can be attributed to trauma or any other thing; that he has a fixation of invalidism; that he cannot work and the outlook for the future is "guarded to poor"; that it would help the patient to end this litigation.
The scope of our review in a Workmen's Compensation case is limited. We are not permitted to substitute our own judgment on the evidence for that of the Industrial Commission. We are authorized, however, to determine whether the Commission could have reasonably made its findings and reached its result upon consideration of all the evidence before it. If we conclude that the decision is clearly contrary to the overwhelming weight of the evidence it is our duty to set it aside. Sections 536.140 and 287.490. (Unless otherwise indicated all statutory references *265 are to RSMo 1949, V.A.M.S.). Art. V, Sec. 22, Constitution of Mo.1945; Wood v. Wagner Electric Corp., 355 Mo. 670, 197 S.W.2d 647; Thacker v. Massman Const. Co., Mo.Sup., 247 S.W.2d 623; Thompson v. Railway Express Agency, Mo.App., 236 S.W.2d 36.
The Commission's Final Award is based in part upon this finding of fact: "12. Parts of body injured by accident: Head and cervical region." The employer argues that such a finding is not supported by competent substantial evidence and is against the overwhelming weight of the evidence. We are unable to agree with this contention. Of course, there is no question but that the employee sustained an injury to his head when it was struck by the falling object, although the full extent of the injury was not readily apparent. The positive and direct testimony of Dr. Woolsey as to the compression of the sensory roots of the first two cervical nerves is sufficient to justify the finding of injury to the cervical region. In addition there is considerable indication in the record that both Dr. Palazzo and Dr. Mueller agreed with Dr. Woolsey upon that point.
The employer next asserts that since the finding did not mention the neurotic element we must conclude that it was based entirely upon the organic condition and that this condition alone was not sufficient to authorize an award allowing compensation for total disability. This contention cannot be upheld. In the first place there is substantial evidence that the pain suffered by the employee was the result of the organic injury to certain nerves. This pain alone was sufficient to disable him. Secondly, it is our view that the finding of injury to the head and cervical region would not mean that the commission excluded the neurosis and Parkinsonism as elements of disability. The finding merely indicates the parts of the body injured as a result of the blow received when the object struck the head of the employee. The neurosis and Parkinsonism were disabling conditions which developed as a direct result of the injury to the parts of the body indicated. There was ample evidence to justify such a conclusion and the finding of the Commission does not negative the consideration of these elements in determining the extent of disability.
In this connection it would seem proper to mention that a general award implies a finding of the facts necessary to support it. The failure to find facts will not defeat an award but it is the finding of facts inconsistent with the conclusion of the commission that would do so. If additional findings were desired by either party a request therefor should have been presented to the Industrial Commission. Jones v. Remington Arms Co., Mo.App., 209 S.W.2d 156; State ex rel. Buttiger v. Haid, 330 Mo. 1030, 51 S.W.2d 1008.
This court has held that a neurosis may present a compensable disability providing the evidence is clear that it is the direct result of the accident. Thompson v. Railway Express Agency, supra. It is contended by the employer that the evidence does not clearly show that the neurosis was directly and proximately caused by this accident. The argument is advanced that the evidence indicates that the neurosis may have resulted from the trauma or from many other causes including anxiety over this litigation. It is true that there was some evidence to support this contention but we are of the view that the preponderance of the evidence was to the effect that there was a causal relation between the accident and the neurosis. It is significant that Mr. Cebak enjoyed good health and worked regularly prior to this accident. He continued to work for about 18 months after his injury although receiving constant medical attention. There is certainly no suggestion of malingering. In addition to these facts and circumstances it should be noted that three specialists in nervous and mental diseases testified that in their opinion the neurosis resulted from the injury. We rule this assignment against the employer.
Each of the temporary awards contained a provision that, "If this award be not complied with, the amount hereof may be doubled in the final award, if such final award is in accordance herewith." Sec. 287.510 so provides. The employer admittedly *266 paid no part of the compensation allowed in the temporary awards. In accordance with the above provision the compensation for that period was doubled in the final award.
The employer asserts that the Commission has authority to inflict this penalty only if the defense is found to be frivolous or vexatious. We find nothing in the statute, or in the cases cited by the employer, to support this contention. The statute must have been enacted in order to encourage the payment of compensation during the interim between the temporary and final awards. If an employer elects to refuse compliance with the temporary award he is assuming a calculated risk of being subjected to the penalty in the event the final award is in accordance with the temporary award. The case at bar illustrates the wisdom of the statute. Mr. Cebak has been unable to work for almost four years and yet has received no compensation during all of that period. The evidence at each hearing rather strongly indicated that he was entitled to compensation. It is our view that the question of assessing the penalty is a matter that is discretionary with the Commission. We should not interfere unless it clearly appears that the action of the Commission was arbitrary and constituted an abuse of that discretion. We have concluded that under the record in this case the Commission was justified in doubling the amount of the temporary awards. For a somewhat similar case in which the assessment of the penalty was approved see Melvin v. Harrison Engineering and Construction Co., 232 Mo.App. 382, 107 S.W.2d 836.
Having disposed of the points briefed by the employer we will now direct our attention to the contentions of the employee upon his appeal. His first complaint is that the Commission erred in making a final award for temporary total disability which limits the compensation to a maximum of 400 weeks. He argues that the Commission should have made either a final award for total permanent disability under Sec. 287.200, or another temporary award that could have been kept open until a final determination of the disability could be made.
We doubt if the evidence would have justified an award for total permanent disability. While all of the neurologists were pessimistic about his future outlook none would express a positive opinion that the employee would not recover. At least we cannot say that the failure of the Commission to find permanent disability was contrary to the overwhelming weight of the evidence on this issue.
Under the law and the evidence the Commission could have made another temporary award and awaited further developments. Upon this record, however, we do not think its failure to do so was error. The employee received his injury more than four years before the last hearing was held. The Commission had made two temporary awards which the employer had refused to pay. The Commission could very properly have concluded that it was to the best interest of the employee to make an award which would settle his legal rights and under which he could collect the compensation allowed.
The award made was in proper form and followed the provisions of Sec. 287.170. Similar awards have been approved in a number of cases, including Melvin v. Harrison Engineering and Construction Co., supra; Gardner v. Ford Motor Co., Mo. App., 130 S.W.2d 201, and Platies v. Theodorow Bakery Co., 334 Mo. 508, 66 S.W.2d 147.
The employee next asserts that the final award is erroneous because it did not require the employer to pay medical expenses in the amount of $949.52 which were incurred by the employee after January 10, 1949. In this connection it should be noted that the employer paid 10 weeks' compensation during the period shortly following the accident when Mr. Cebak was unable to work and furnished considerable medical aid from the date of the accident until January 10, 1949. The Commission in its first temporary award found that the employer was not liable for the medical expenses in question because they *267 were incurred after the first ninety days following the injury and without a special order for same by the Commission. This ruling was in accordance with the express provisions of Sec. 287.140(1). To avoid the application of this statute the employee contends that the expenses were incurred after the employer had filed an answer herein denying that the injury and disability were the result of the accident and therefore it would have been useless to have sought further medical aid from the employer or a special order for same from the Commission. He relies upon the decision of this court in O'Malley v. Mack International Motor Truck Corp., 225 Mo. App. 1, 31 S.W.2d 554. In that case an award was approved which allowed medical aid procured by the employee without a special order from the Commission and after the statutory time limitation had expired. One reason assigned by the court for its decision was that the employer had denied all liability for the injury. However, we do not think that the opinion in the O'Malley case is controlling here because the facts and circumstances therein were most unusual and clearly distinguish it from the case at bar. We are of the view that under the record in this case the Commission properly refused to require payment of this additional medical aid by the employer. Johnson v. Kruckemeyer, 224 Mo.App. 351, 29 S.W.2d 730. The Commission in both of the temporary awards ordered additional medical treatment and this accounts for the allowance in the final award for certain medical aid obtained thereafter.
The employee also contends that the Commission erred in failing to incorporate in the final award a provision for future medical expense. Under the provisions of Sec. 287.140(1) the Commission had authority to require the employer to furnish such additional medical treatment as it may determine to be necessary to cure and relieve the employee from the effects of the injury. We have concluded, however, that the failure of the Commission to provide for additional medical aid was not error. As already indicated the final award was made more than four years after the injury. Medical aid was furnished by the employer for 15 months and an additional sum of $344.25 was allowed in the final award. There is some indication in the record that following the first temporary award the employee refused certain medical aid offered by the employer. It should also be noted that at the third hearing Dr. Moore testified that because of the attitude of the employee in this case, no treatment furnished by the employer would be beneficial. We think the Commission could have reasonably reached its decision on this point upon consideration of all the evidence before it and that such is not against the overwhelming weight of the evidence.
What we have said will indicate our view that the judgment of the circuit court, affirming the final award of the Industrial Commission, was proper and should be affirmed. It is so ordered.
BENNICK, P. J., and ANDERSON, J. concur.