**Amos GREER, Respondent,**

v.

**BLACK, SIVALLS & BRYSON, INC.,
Appellant.**

**No. 25755.**

Missouri Court of Appeals,
Kansas City District.

July 25, 1972.

George L. Gordon, Daniel M. Dibble, Harland D. Burkhead, Kansas City, for appellant; Lathrop, Koontz, Righter, Clagett, Parker & Norquist, Kansas City, of counsel.

John J. McFadden, Louis Wagner, Kansas City, for respondent.

SHANGLER, Chief Judge.

Claimant suffered injury to his pudenda when the grinding wheel he was operating at work exploded, struck his groin, slashed his penis and tore open the scrotal sac. The impact threw him against a stack of metal spheres and rendered him unconscious. Claimant suffered a loss of libido which passed into a permanent condition of sexual impotence. The Industrial Commission found "the accident (sic) to the claimant's groin area, rendering him sexually impotent, caused him to develop an anxiety neurosis that made him permanently partially industrially disabled", and awarded him compensation.

The employer contends there was no causation established between the accident and the psychoneurosis and therefore the award of the Industrial Commission lacked support in substantial, competent, evidence on the record considered as a whole.

The evidence given by claimant Amos Greer, then in his early thirties, was that he was injured in the manner described, on July 6, 1966 while in the employ of Black, Sivalls and Bryson, Inc. His work during the six months of employment with that firm had been satisfactory and without incident. He was taken to St. Joseph Hospital for treatment of his injuries where he remained for two weeks. After about a month and a half, he returned to his work as a welder but after a brief period, he found he could not do the work and left. He then went to work for a laundry for two and a half months but was fired because he could not do the work. He had developed a nervousness, a feeling that he was "going to blow up", became easily irritated, frequently felt nauseous, had frontal headaches, blurred vision, and pain in the arms, legs, chest, ear and neck. These conditions disabled him from work. He had not experienced such symptoms before, not even when his skull was fractured by a hammer blow some five years before. He disclaimed any prior industrial injuries. In all, he had worked only a total of six months since the accident of July 6, 1966.

For some time before the accident, claimant had been separated from his lawful wife and was living in concubinage with another woman whom he spoke of as his wife. His sexual relation with her before the accident had been one of complete fulfillment. As a result of the accident, a lump about the size of a walnut appeared on his penis. Although his yen remained undiminished, his phallus would not become sufficiently rigid to enter her. He was not able to complete intercourse because of the pain in his groin and genitalia. They tried manual stimulation of the penis, but that did not help. His inability to "support her (sexual) habit", as claimant expressed it, caused her to leave him. His impotence brought on his nervousness, he said. Claimant took to drinking steadily and had bouts with the law. At the time he gave his testimony, on January 23, 1969, he was a patient in the Alcoholic Ward of the Psychiatric Receiving Center, having come there voluntarily from the Municipal Farm where he was serving a sentence for drunkenness.

The medical evidence concerning physical injury to claimant consisted of three

medical reports, two of them from urologists, all of whom had treated or examined the claimant on behalf of the employer. This evidence disclosed findings of some physical injury to the groin and genitalia but no permanent disability. Dr. George J. Lytton made a psychiatric evaluation of the claimant on behalf of the employer and gave his testimony. Claimant complained to him of impotence and that he was too weak to work. Dr. Lytton found no neurological defect nor psychiatric condition which could be related to the accident, and no disability which would affect his ability to hold any usual employment.

The award for compensation was based on the testimony of Dr. Vernon Jobson, a psychiatrist. His credentials for that specialty appear impressive on this record, and were not disputed at the trial hearing. His evaluation of the claimant was based on three interviews with him, those of September 20, 1967, September 25, 1967 and February 2, 1968. His diagnosis was: "anxiety reaction, chronic, severe, manifested by headaches, a tingling sensation in the frontal area of the skull, blurring of vision, hearing loss, stiffness in the neck, chest pain, palpitations of the heart, pain and numbness and tingling in both upper extremities, nausea, pain in the legs, and impotence". He concluded that the precipitating stress for the condition was the accident of July 6, 1966 and that the immediate cause for the onset of the symptoms was the departure of claimant's mistress in December of 1966. He found that the neurosis had permanently incapacitated the claimant from engaging in gainful employment.

Dr. Jobson had testified that an anxiety neurosis can be caused by either physical or emotional stress. His psychiatric evaluation, admittedly, was based on the history given him by the claimant and incidences of such stress were relevant to such a determination. The claimant had failed to disclose to Dr. Jobson, however, numerous instances of stress, such as the skull fracture of 1961, that he had been twice stabbed by his concubine—in July of 1966 and then in September of 1966—that he had been robbed and beaten in October of 1967 with resultant grand mal seizure, injury to the head and complaint of double vision; that he had been hospitalized for a nasal fracture in April of 1968, for heavy drinking in May of 1968, for a fracture of the ulna by a blackjack in August of 1968 and for a laceration of the neck in December of 1968. Neither had the claimant told Dr. Jobson that the woman with whom he was cohabiting at the time of the accident was not his wife, from whom he was then separated, nor did he disclose the episodes of arrest for disturbing the peace and drunkenness. The employer contends that Dr. Jobson's testimony is without probative value because he made his diagnosis "without the benefit of knowledge of facts (these incidences of stress) which he himself admitted to be essential" to a proper evaluation. It is the employer's position that any of these stresses, particularly those which may have resulted when claimant was twice stabbed by his paramour—all unrelated to the accident—could have precipitated the anxiety neurosis which was determined to be the source of claimant's disability.

It was Dr. Jobson's conclusion, iterated and re-iterated under cross-examination, that the stress which precipitated the claimant's predisposition to neurosis was the physical injury to the pudenda which prevented a full phallic erection, thus rendering him impotent. The symptoms of neurosis, however, did not appear until four months later when his companion left him because he could not fulfill her, thus causing claimant to believe "he was doomed sexually, he was no good". For these reasons, Dr. Jobson did not consider the undisclosed incidences of stress were related to the initial phase of impotence or the anxiety neurosis which perpetuated it. The cuts, assaults and broken bones (except for the skull fracture of 1961) were all stresses which came after the impotence arose from the physical injury, and although the stabs inflicted by the paramour

preceded the neurotic symptoms, they were months apart and not causally sequential. Dr. Jobson found, on the other hand, that the syndrome of neurosis appeared in December of 1966, soon after claimant's lover deserted him and concluded the two events were causally related.

Dr. Jobson did not consider the skull fracture of 1961 significant as a possible precipitating stress or predisposing cause of claimant's neurosis, since he had been effectively employed and otherwise well-adjusted from that time until the injury of July, 1966. And although the assaults and injuries claimant suffered after the industrial injury could account for some of the symptoms he displayed, Dr. Jobson concluded, no single disease or organic state could produce all of the bizarre symptoms, including the impotence of which Greer complained. As to whether the incidents of drunkenness and roistering were manifestations of some emotion stress other than produced by the accident of July, 1966, Dr. Jobson testified that if claimant had exhibited such conduct before that date, it would not be significant because he was able to work steadily and function normally, and if exhibited after the accident, must be considered as a neurotic manifestation precipitated by that event.

A neurosis is a compensable injury under the Workmen's Compensation Law if its causal connection with the accident is shown by clear evidence. Thompson v. Railway Express Agency, Mo.App., 236 S.W.2d 36, 39 [3]; Cebak v. John Nooter Boiler Works' Co., Mo.App., 258 S.W.2d 262, 265 [4]; Boatwright v. ACF Industries, Mo.App., 463 S.W.2d 549, 551 [1]. We have determined that Dr. Jobson's testimony was clear evidence, competent and substantial, to support the finding of the Industrial Commission that the accident directly caused the sexual impotence and anxiety neurosis which has resulted in claimant's permanently partial industrial disability.

The employer cites Wilhite v. Hurd, Mo., 411 S.W.2d 72, to support its contention that since the symptoms of neurosis did not appear until four months after the accident, the causation was at best remote, and will not support an award for compensation. In *Wilhite*, the claimant suffered a compensable accident resulting in the loss of the sight of his right eye. The claimant continued to work until he was fired nine months later. He then developed a cataract on his left eye which was not caused by the accident and which left him totally blind. About one and one half years after the accident occurred, the claimant began having serious emotional disturbances. The claimant had psychiatric testimony tending to prove that the original accident was the cause of anxiety neurosis. In affirming the decision of the Industrial Commission denying compensation, the Supreme Court observed (l.c. 78 [5]) that although "upon the record in this case, the Commission might well have made the finding suggested by plaintiff", the award actually made was supported by competent and substantial evidence. There is no suggestion in that opinion that a given lapse of time between an industrial accident and the onset of a neurosis, *per se*, denotes remoteness—that is—a lack of causality between the two events. The determination of legal cause for injury in such cases is not controlled by considerations of time or distance, but by the succession of the events. Hillis v. Home Owners' Loan Corporation, 348 Mo. 601, 154 S.W.2d 761, 764 [5].

In the case before us, Dr. Jobson testified that the permanent condition of sexual impotence, which was the source of claimant's disabling neurosis, was the direct result of the accident. The initial impotence, brought on by the pain of any sexual exercise because of injury to the genitalia, was perpetuated by claimant's anxiety that he had lost his sexual puissance after his companion left because he could no longer fulfill her. This constitutes evidence of a rational, necessary, direct sequential relation-

ship between the original accident and the disabling neurosis which, if believed by the Industrial Commission was competent, substantial, proof of causation between the two events.

The judgment is affirmed.

All concur.