JOSEPHINE BROWN, Dependent of CARL BROWN, Deceased Employee, v. R. J. BROWN COMPANY, Employer, and EMPLOYERS' MUTUAL LIABILITY INSURANCE COMPANY, Insurer, Appellants.—No. 38268. —172 S. W. (2d) 645.

Division Two, August 27, 1943.

*Luke & Cunliff* for R. J. Brown Company and Employers' Mutual Liability Company, appellants.

558

*J. Edward Gragg* and *Wm. R. Schneider* for respondent.

ELLISON, J.—The defendant employer, R. J. Brown Company and its insurance carrier appeal from a judgment of the circuit court of the City of St. Louis, which in turn affirmed a finding and award by the Missouri Workmen's Compensation Commission of $8000 and $150 burial expenses in favor of the. respondent widow, for the accidental death of her husband Carl H. Brown, arising out of and in the course of his employment. The claim as originally filed named both the appellant Brown Company and an Illinois corporation, The Red Bud Oil Company, as employers. The Commission discharged the latter.

The deceased, a traveling salesman, was killed at Ellis Grove, Illinois when his automobile collided with a tree alongside the highway about 9:15 at night in February, 1941. No one was with him; there were no eyewitnesses; and there is no direct evidence as to his immediate mission at the time. Appellants' only assignment of error is that there was not sufficient competent evidence to support the award. Specifically, the contentions are that the evidence was spec-

ulative and conjectural; did not show whether the deceased was acting for the appellant employer, or the discharged employer, or on his own business, or was pleasure bent. At best, appellants argue, the evidence only gave rise to conflicting inferences of equal weight on these several theories. Respondent introduced all the evidence on which her claim must rest: the appellants practically none.

We agree to the basic legal rules laid down by appellants, by which this evidence must be measured: (1) that the burden was on the respondent to produce substantial competent evidence; (2) that if the evidence was purely conjectural we cannot affirm the judgment merely because the circuit court and the Commission viewed it as being substantial and preponderating; (3) and that if respondent's own circumstantial or inferential showing [646] merely put the evidence in equipoise as to whether appellants are liable or not, then she did not make a prima facie case.

It is conceded that the deceased was a salesman for the appellant Brown Company, and also for the Red Bud Company. The big question in the case is which one of these corporations he was acting for at the time of the accident, if either. R. J. Brown was head of the Brown Company, located at St. Louis. It wholesaled and retailed various naphthas and lubricating oils including Pennzoil, a Pennsylvania product, in a territory covering thirty-one counties in Illinois. R. J. Brown was a brother of the deceased Carl H. Brown. The latter was a stockholder and president of the Red Bud Company, located at Red Bud, Illinois. But he owned no stock in the Brown Company, nor did R. J. Brown own stock in the Red Bud Company.

This latter company had the agency from the Brown Company for distributing Pennzoil in about three counties in Illinois. It also sold other products such as gasoline and tires, which the Brown Company did not handle. The deceased lived in St. Louis and was a general salesman for the Brown Company, without a fixed territory or itinerary. He sold the Brown Company's products wherever he went on a salary, not commission, but was also privileged to sell all the products of the Red Bud Company in its more restricted territory. But whenever he sold Pennzoil the sale order would be filled by and credited to the Red Bud Company.

On the Saturday before the accident, which occurred on Tuesday, R. J. Brown directed the deceased Carl Brown "to build up more business on Pennzoil in Illinois, and specifically the Red Bud territory." The morning of the accident the deceased told his wife he was going to Illinois and would return the evening of the next day. That morning he transacted some business for the Brown Company in St. Louis, and then left for Illinois arriving at Red Bud about noon. Red Bud is about 40 miles southeast of St. Louis. There he talked to Eltie Brand, manager of the Red Bud Company, and said he had been ordered to boost the sale of Pennzoil in that territory.

He made the same request of Clyde Seibold who was in charge of the Red Bud Company's uptown filling station. The deceased told Brand he was going to Chester, Illinois and would see him when he came back. Chester is 26 miles further south on Highway No. 3.

He did arrive at Chester about 30 minutes later. There he talked to witness Cowell, who had an automobile agency. Cowell had previously tried to trade a new red Oldsmobile to the deceased for the older black one the latter was then driving. The deceased renewed the trade discussion and wanted Cowell to accept part of the cash difference in Pennzoil. This conversation lasted about an hour. Then the deceased left saying he was going out to sell some oil, but he did not say where. His movements are not accounted for until about 3 or 4 o'clock that afternoon, when he stopped at the filling station of Donald Downs at Sparta, Illinois which is 18 miles east of Red Bud and apparently a little further northeast of Chester. The deceased tried to induce Downs to put in a stock of Pennzoil. He told Downs "his boss was on him and wanted us to push Pennzoil." This conversation consumed about 30 minutes but deceased did not tell him where he was going or where he intended to stay that night.

That evening about 6 o'clock deceased returned to Chester and talked to Cowell again about the automobile trade. This took about an hour during which time they drank some beer and ate some sandwiches at a neighboring tavern owned by Cowell. It wound up that the deceased made the automobile trade and the new Oldsmobile with its keys was turned over to him. His wife knew of the prior negotiations for the new red Oldsmobile and there is a hesitating admission in her testimony that when he left that morning he told her that he might have a surprise for her on his return—referring to the new car. Deceased required Cowell to take five cases of Pennzoil, four or five gallons in a case, as part of the cash difference. He left about 7 o'clock, but no papers were signed and the deceased said "I will be back in the morning to settle up with you."

A little over two hours later the accident happened at Ellis Grove, which is about 11 miles north of Chester, and nearly midway between there and Red Bud. The reports of the accident filed with the Workmen's Compensation Commission by both the Brown Company and the Red Bud Company stated the deceased was en route from Chester to St. Louis at the time. Appellants made no complaint about these reports in their original brief. But respondent's [647] brief referred to the foregoing recital in them. In a reply brief appellants argue the recital is hearsay; the documents were not authenticated; and that the recital is not binding on the appellant insurance carrier in any event. But we find in the record that in the cross-examination of witness Cowell by counsel for the Brown Company *and* the insurance carrier (the same counsel represented both) the fact was brought out, or at least stated, that "the route where the accident happened

. . . was on the direct way to St. Louis." And deceased had traveled in the direction of St. Louis in going to Ellis Grove. It was also on the way to Red Bud; and the deceased had told witness Brand that noon that he would see him "when he came back."

Reviewing the criticisms appellants make of the foregoing testimony, they say, first, that he told his wife he would not be back until the evening of the *next* day, whereas according to respondent's theory he was returning the same day; that on the evening of that day he was engaged in negotiations for the purchase of the new automobile, which was personal business and not the business of his employer; that there is no evidence tending to show what the deceased intended to do that evening; that there is no evidence showing which direction he was travelling at the time of the accident; that there was no showing he carried with him any order books or papers such as he might be expected to have on a business trip; or that he had planned to see any Company customers.

Some of the "conjectural inferences" that appellants say may be drawn from the testimony are: that at the time deceased was working for the Red Bud Company and not for the Brown Company; that he may have gone to Chester to buy the new automobile instead of to stimulate the sale of Pennzoil; that after he bought the new automobile he may have been trying it out on the highway when he was killed; or he may have been going to or returning from a roadhouse. However, the point stressed by appellants is that whatever deceased was doing in a representative capacity at and before his death, the stronger probability and inference is that it was for the Red Bud Company rather than the appellant Brown Company.

Appellants point out that Brand and Seibold, employees of the Red Bud Company heretofore mentioned, testified they took orders from the deceased and would follow his instructions because he was president of that company. Appellants further cite the testimony of witness Downs, who said the deceased had been calling at his filling station for about a year, and that whenever he purchased any product from the deceased he made the payment to the Red Bud Company—that all his transactions were with *that* company. Another point emphasized is that whenever Pennzoil was sold in the three-county territory of the Red Bud Company the sale order would be filled by the Red Bud Company and the purchase price paid to it; also that the deceased when in that territory would sell merchandise which only the Red Bud Company handled, such as Texaco gasoline and tires. Appellants' clinching argument is that on the night of the accident the deceased was returning to Red Bud, as he had told witness Brand he would do, in connection with some business of that company, not the Brown Company; and that when the respondent filed her claim in this case it was recited that *both* the Brown Company and the Red Bud Company were the employers.

We cannot agree that these arguments sap the vitality of respondent's prima facie showing. There is direct testimony that. the deceased was ordered by his employer to stimulate the sale of Pennzoil in the Red Bud territory. This was on Saturday. With Sunday intervening he went there the next Tuesday. There is direct testimony that during the afternoon at three different places, Red Bud, Chester and Sparta, he endeavored to do that, and even when he purchased the new car he required the vendor to take 20 or 25 gallons of Pennzoil in part payment. The testimony is that he was required by the Brown Company to furnish his own car and pay for his own gasoline in this territory. If he was returning to Red Bud at the time of the accident, as he had told Brand he would do, and this was in furtherance of his mission, he was in the course of his employment. Such is a warrantable inference; and we see nothing to combat it—unless he had decided to return to St. Louis with the intention of returning to Chester the next morning, as he had told Cowell he would do. But even that would not have been a vitiating detour. LaFleur v. Poesch, 126 Neb. 263, 275, 252 N. W. 902, 907.

Of course the deceased in helping the Red Bud Company sell Pennzoil was [648] working in the interest of that company. But he was also working in the interest of his employer, The Brown Company, which was the wholesaler of that oil. The more sales the Red Bud Company made of that product, the more business the Brown Company would have, because they furnished the product to the Red Bud Company. This is obvious. Teague v. Laclede-Christy Clay Products Co., 331 Mo. 147, 152(2), 52 S. W. (2d) 880, 882(2) was a case of that character. There, it seems, two salesmen for different companies, one of whom sold the products of the other, were traveling together as a matter of mutual benefit. The opinion says the companies "advised" them to do it. In this case the deceased had a specific order to do the exact thing he was doing. There is no question in our minds about the fact that the Commission was well warranted in finding that the deceased was acting in the course of his employment at the time of his death. The judgment therefore is affirmed. All concur.