Wilburn Link STEPHENS, Respondent,

v.

CRANE TRUCKING, INCORPORATED, Employer-Appellant,

and

The Fidelity & Casualty Company of New York, Insurer-Appellant.

No. 54455.

Supreme Court of Missouri, Division No. 1.

Nov. 10, 1969.

Jack P. Steinle, Aurora, Paul D. Ritters-house, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for respondent.

Kenneth H. Reid, Meredith B. Turner, Turner, Reid & Duncan, Springfield, for appellants.

HIGGINS, Commissioner.

Appeal by employer and insurer from judgment affirming award of the Industrial Commission of Missouri on November 13, 1968, which awarded claimant compensation for permanent total disability and directed payment by appellants for nursing care not furnished by them. Appellants concede that claimant is totally and permanently disabled as a result of an accident suffered during the course of his employment and there is no dispute on that portion of the award. The sole dispute is with that portion of the award which ordered compensation to claimant for nursing care rendered claimant by his wife, which has accrued:

(1) During initial 90 days after claimant's injury, December 21, 1961, from February 1, 1962, to March 13, 1962, 41 days at $10.00 per day .................................... $ 410.00
(2) Following end of initial 90 days, March 20, 1962, to initial award of referee, June 18, 1968, 2,280 days at $6.00 per day ................................................. 13,680.00
(3) Following referee's award to appeal from circuit court, January 6, 1969, 202 days at $6.00 per day ................. 1,212.00

$15,302.00

Appellants seek to be relieved from this portion of the award and judgment and the amount in dispute thus exceeds $15,-000.00

Appellants contend:

I. That the award for nursing services during the first 90 days after injury is not supported by competent and substantial evidence because appellants had no knowledge that claimant was out of the hospital during this period, that he was in need of nursing services, or that claimant's wife was furnishing nursing services; and that appellants had the right to select the parties to provide medical care during that period and the legal effect of claimant's selection of his wife to perform such services was that of obtaining such services at his own expense.

II. That the award for nursing services following the initial 90 days until the referee's award should be set aside because claimant failed to obtain a special order for such services and there is no competent and substantial evidence to support findings that appellants were aware of the need of such services and that the requirement of special order was waived.

III. That the award for nursing services after the referee's award "for so long as he is in need of nursing * * * and not in any hospital" should be set aside because it

is based on speculation, guesswork, surmise and conjecture and not on competent and substantial evidence.

IV. That even if all the award for nursing services be not set aside, the award should be modified to delete allowance for such services after the completion of medical care August 25, 1965, because there is no competent and substantial evidence that any such services have been needed since that date to "cure and relieve" claimant from effects of his injury.

Behind these contentions are the findings of the referee that claimant should be compensated for nursing services for 41 days during the initial 90 days following the injuries at $10.00 per day, and at $6.00 per day from the date of his award, June 18, 1968, during such time as he is not in any hospital, and of the Industrial Commission "that the employer and insurer were aware at all times * * * of the physical condition of claimant and the disabling nature of his injuries * * *; that the employer and insurer were aware after the initial 90 day period following the injuries that nursing services were necessary for the proper care and treatment of claimant and that when they failed to provide such services or failed to offer to provide such services after the initial 90 day period * * *, they became liable for the nursing services furnished by claimant's wife which we find were necessary and proper. * * * that as the employer and insurer were aware of the fact that nursing services were necessary for the proper care and treatment of the claimant after the initial 90 day period * * * while additional medical services were being furnished claimant by employer and insurer, the special order required by Section 287.140 RSMo 1959, V.A.M.S., was waived.

"It is therefore ordered that employer and insurer compensate claimant for the nursing services rendered by his wife immediately after the initial 90 day period * * * until the date of the referee's award, June 18, 1968, in the amount of $6.00 per day.

"The award of the referee of June 18, 1968, except as herein amended is hereby affirmed in the manner as set out above."

This award is not to be set aside upon review if the Industrial Commission could reasonably have made its findings and reached its result on the evidence before it because in reviewing a compensation case the court's duty is "to determine whether the Commission's award is supported by competent and substantial evidence upon the whole record. Sec. 22, Art. V, Const. of Mo. 1945, V.A.M.S. * * * 'This does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to set aside decisions clearly contrary to the overwhelming weight of the evidence. Of course, the reviewing court should adhere to the rule of deference to findings, involving credibility of witnesses, made by those before whom the witness gave oral testimony.' * * *

"In determining whether the Commission could have reasonably made its findings, and reached the conclusion it did reach, upon consideration of all the evidence before it, we view the record in a light most favorable to the findings of the Commission, consider the favorable inferences which the Commission had a right to draw from the evidence before it, and then determine whether the Commission's findings, even if supported by competent and substantial evidence, are contrary to the overwhelming weight of evidence in the whole record. Thacker v. Massman Const. Co., Mo.Sup., 247 S.W.2d 623, 627." Francis v. Sam Miller Motors, Mo., 282 S.W.2d 5, 11–12 [1]; Bolen v. Wallace, Mo., 338 S.W.2d 73, 75 [1].

Contention I attacks the commission's finding that the employer and insurer knew

of claimant's disabling injuries and his need of nursing care.

Wilburn Link Stephens sustained his injuries when the truck he was driving for his employer collided with another motor vehicle December 21, 1961. The employer and insurer authorized medical care and treatment for Mr. Stephens and they selected doctors associated with the Smith-Glynn-Callaway Clinic, Springfield, Missouri, who entered him in the Springfield Baptist Hospital as an emergency case in severe shock. His injuries upon admission were diagnosed as: "1. Severe fracture dislocation of the left ischio-pubic ring. 2. Fracture left acetablum. 3. Posterior dislocation left hip. 4. Traumatic separation of the pubic symphysis. 5. Traumatic separation of the left sacro-iliac joint. 6. Fracture simple comminuted midshaft right femur. 7. Fracture compound comminuted upper portion of left tibia. 8. Fracture simple oblique left tibial metaphysis in the mid portion of the tibial plateau. 9. Chip fracture medical condyle of tibia. 10. Fracture simple upper shaft of left fibula." In addition, exploratory surgery December 30, 1961, revealed a "traumatic perforation of the small bowel." The first of sixteen reports of the principal doctor, Frank D. Sundstrom, M.D., to the insurer dated January 8, 1962, concerning claimant's injuries, recited the injuries, that "there appears good hope of his survival," the certainty of permanent partial disability, and the ultimate diagnosis of permanent and total disability is not disputed. The medical treatment furnished claimant by appellants was accomplished by the doctors selected by them and was continuous from December 21, 1961, to August 25, 1965. The conditions requiring treatment and the treatment given were reported regularly throughout that time to appellants and included and covered four periods of hospitalization: December 21, 1961, to January 31, 1962; March 14, 1962, to April 9, 1962; May 12, 1962, to May 22, 1962; and June 8, 1962, to July 8, 1962. A claims representative of insurer saw Mr. Stephens

and his condition at the hospital December 22, 1961, and at his home in the Fall of 1963. He was bedfast on both occasions.

During the first hospitalization of Mr. Stephens December 21, 1961, to January 31, 1962, Mrs. Stephens was with her husband "around the clock." She slept on the floor and ate at the hospital cafeteria. She "fed him, got him ice water, kept cool cloths on his head, attended his vomit pan, lifted him on and off of the bed pan and when he had blood * * * would watch the bottle and go tell the nurse when it was empty and when he was on i. v. fluid * * * would tell them when that was empty and * * * would watch for any swelling where the needle was inserted and go tell the nurses, and watch his catheter tube when he had that in, and his stomach pump, * * * bathed him, helped change the bed, washed his teeth and shaved him * * * massaged his upper shoulders, back rub, shoulder rub, massage * * * helped move him off his bed onto the (surgery) cot, * * * put dressings and medicated powder on him * * * they wanted someone with him all the time."

When Mr. Stephens went home on January 31 he was bedfast and helpless in a full body cast and remained in that condition until his return to the hospital March 14, 1962. During those 41 days Mrs. Stephens prepared and fed her husband a special diet, "turned him every hour around the clock over on his stomach and on his back, he couldn't move by himself, * * * lifted him on and off the bed pan and cleaned him up, and his urinal can, bathed him, washed his teeth, shaved him, shampooed his hair, changed the linens, his bed, he would mess it quite often * * * massaged his shoulders and gave him his medication."

During the second hospitalization from March 14, 1962, to April 9, 1962, claimant's body cast was removed "but one leg hadn't healed so they recasted it, * * * and then he had abdominal surgery again. * * * He was still just as helpless." Mrs. Stephens stayed with her husband around

the clock, slept on the floor, and performed all the services she had performed during the first hospitalization.

Mr. Stephens returned home April 9, 1962, and stayed until his third hospitalization. During this period "he was still very helpless," not able to be out of bed, and Mrs. Stephens performed the same services she had rendered her husband following the first hospitalization.

From May 12, 1962, to May 22, 1962, Mr. Stephens underwent a third hospitalization where additional abdominal surgery was performed. He was unable to help himself and Mrs. Stephens attended him around the clock and performed about the same duties as during the previous hospitalizations.

During his time at home following the third hospitalization, May 22, 1962, to June 18, 1962, Mr. Stephens "was still just as helpless as before," was confined to his bed, and Mrs. Stephens performed about the same services that she had rendered at home following the previous hospitalizations.

During the fourth hospitalization, June 18, 1962, to July 8, 1962, Mr. Stephens was "still helpless, he couldn't get out of bed." He began therapy and learned to use crutches. Mrs. Stephens was present "a third or half of the time, * * * helped lift him off of the bed onto his crutches," helped him with his therapy, and performed the same duties she had performed during the third hospitalization.

When Mr. Stephens returned home July 8, 1962, "he was still bedfast, he couldn't get out of bed." Mrs. Stephens "lifted or helped him out of bed several times a day up on his crutches for therapy, and * * * exercised him, his ankles and knees, one knee * * * he was still on medication, still had to be bathed and shaved and his teeth washed." She put him on and took him off the bedpan and tended his urinal. This continued until March 27, 1963, when Mr. Stephens received his braces, after which he still needed his wife's assistance

in standing. She also bathed and dressed bed sores and it was nearly two more years before Mr. Stephens could be up for as long as half a day. At that point she helped him to the car and propped him in the back seat with pillows. As of the last visit to Dr. Sundstrom, August 25, 1965, Mr. Stephens was still using the bedpan and had to be fed in bed. Since August 25, 1965, he has been able to stay up half of the day, arising about ten or eleven and going back to bed about two-thirty to three in the afternoon. "He can't walk without his shoes and braces, if he is laying down and has to go to the bathroom, his shoes and braces have to be put on, he can't put on his shorts or his pants, trousers, and I bathe his feet, cut off his toenails, he has corns and callouses on his toes, I cut those out, I help him shave, * * * and I help him in and out of the shower, stand by it so he won't fall, I give him medication * * * and at night I keep the urinal can by his bed, * * * if he has to go to the bathroom day or night, his shoes and braces have to be put on and when he lays down I take them off and when he gets up they have to be put back on * * * about six or eight times a day." When he takes a shower it is necessary for her to "take off his shoes and braces, take off his trousers and shorts * * * and * * * stand by him so he won't fall and when he gets through showering * * * redress him and put his shoes and braces back on." She has to put his shoes and braces on for him before he can go to the table to eat, and without them on he cannot be up to wash his teeth. She washes his head and stands "by him so he doesn't fall when he has turned loose of his crutches." He cannot walk an incline or steps without help, he cannot walk beyond a short distance unassisted or sit comfortably for any length of time. Mrs. Stephens is required to be with him "about three fourths of the time."

Prior to her husband's injuries on December 21, 1961, Mrs. Stephens worked at seasonal jobs, cannery, and processing

plants, near their home in Galena, Missouri. She has not been able to work outside the home since the accident "because he can't be left alone (and) can't afford help to take care of him." She has not had any hired help or other assistance with her household duties. She has been instructed by Mr. Maples, the nursing staff and doctors on means of particular care including medication and therapy required by her husband, and she gained experience in caring for her husband during his several hospitalizations.

No one acting for the employer and insurer ever authorized Mrs. Stephens to furnish, or agreed to pay her for furnishing, nursing care for her husband, nor did the employer and insurer ever offer to supply nursing services except for that rendered by the hospital staff during hospitalization.

Eva Maxine Bowling, a licensed practical nurse for hire in the area of the Stephens residence, described the services she renders to patients with disability similar to that of Mr. Stephens and such services correspond to those rendered by Mrs. Stephens. Although the reasonable value of the services of Mrs. Stephens is not in dispute, the reasonable daily charge for such services for an 8-hour shift would be "thirteen and a quarter to fifteen dollars a day."

■ This statement of the nature, character, and extent of respondent's injuries and the type of treatment they involved, appellants' actual knowledge of such facts, and the nature of the nursing services required and rendered demonstrates support by competent and substantial evidence of respondent's need of nursing services when at home and appellants' awareness of such need. It is certain that the employer and insurer knew of the disabling nature of the employee's injuries and his helpless condition through the diagnosis made and treatment given and reported by the doctors selected by the appellants and through the actual observation by the insurer's claims representative at the hospital the

day following the injuries. It also is certain that the doctors chosen by appellants released Mr. Stephens to go home at the end of each hospitalization in a helpless condition and appellants knew they had made no offer or provision for nursing care of Mr. Stephens while in such condition. It may be inferred from the services rendered by Mrs. Stephens while her husband was in the hospital that she would continue to render those services at home absent provision for such care by appellants.

Consequently, with respect to contention I, the Industrial Commission reasonably could have made its finding that appellants were aware of the disabled condition of the employee and of his need for nursing services.

■ The commission properly found further that when appellants failed to offer or provide such services, appellants became liable for the employee's own such provision. Section 287.140, V.A.M.S., as it applies to this case, provided: "In addition to all other compensation, the employee shall receive and the employer shall provide such medical, surgical and hospital treatment, including nursing * * *, as may reasonably be required for the first ninety days after the injury * * *, to cure and relieve from the effects of the injury, and thereafter such additional treatment as the commission by special order may determine to be necessary. If the employee desires, he shall have the right to select his own physician, surgeon, or other such requirement at his own expense." Under this section "an employer has the privilege in the first instance of designating and selecting the physician and hospital to render the care required by the statute. However, if an employer, with notice that an employee has sustained a compensable accident [Aldridge v. Reavis, Mo.App., 88 S.W.2d 265, 267(4)], *refuses or neglects* to provide or tender necessary medical or hospital treatment, the injured employee need not lie helpless or in pain; but, in such circumstances, the

employee may procure necessary treatment * * * and have an award against the employer for the reasonable cost thereof." Slider v. Brown Shoe Co., Mo.App., 308 S.W.2d 306, 310 [8]. See also Wilson v. Emery Bird Thayer Co., Mo.App., 403 S.W.2d 953, 957 [3].

■ But, say appellants, in no case has there been an allowance for nursing services by a family member during the initial (here 90 days) period when the employer had no knowledge or information that the employee was not hospitalized, was in need of nursing, or that such services were being performed by the employee's wife. See 99 C.J.S. Workmen's Compensation § 268, p. 918, cited in California Cas. Indem. Exchange v. Industrial Acc. Comm., 84 Cal.App.2d 417, 190 P.2d 990, 993; Moore v. International Shoe Co., Mo.App., 213 S.W.2d 215, 222.

The employer's knowledge and employee's need have already been demonstrated in this case, leaving only the question whether employee can be compensated when the needed services are performed by his wife, on which Collins v. Reed-Harlin Grocery Co., Mo.App., 230 S.W.2d 880, is directly in point. Mr. Collins was burned on his head, neck, arms, and body by the explosion of a can of lye resulting in permanent loss of hearing in his right ear, injured nerves and tissues and permanent disfigurement. Although the referee allowed compensation to the employee for nursing rendered claimant by his wife during the initial period, the full commission denied the award. The evidence showed that the employee's burns were treated at the hospital, after which Mrs. Collins fed, bathed, and dressed her husband for two months and, after removal of bandages, she dressed his wounds and gave him medication. Against the same contention as that made by appellants here, the court held that the Industrial Commission improperly denied recovery to claimant for nursing services rendered him by his wife during the first 90 days after injury. It is appropriate to the disposition

of the same point and arguments in this case to quote at length from Collins v. Reed-Harlin Grocery Co., supra, 230 S.W.2d l. c. 890 [6]: "In Daugherty v. City of Monett, 238 Mo.App. 924, 192 S.W.2d 51, at page 56, this court, following the old rule that the findings of fact by the Commission had the force and effect of a verdict of a jury, sustained the Commission in allowing compensation for nursing, rendered by employee's wife, who was not a graduate nurse. * * * 'Appellants contend that the Commission was in error in making an allowance for nursing by respondent's wife. They assert that nursing is a duty she owed her husband by virtue of the marital relation and for which she could not collect from him and which, for that reason, could not be included in the award against appellants * * *.'

"The court states in this opinion that there is no dispute that the wife rendered the services, in addition to her ordinary household duties. The law (now Section 287.140 supra) does not require that the nursing be by a trained nurse but merely holds the employer liable for nursing. This case also holds that the Workmen's Compensation Law must be given a liberal construction in favor of the employee and that under such construction the employer should pay for competent nursing, even though rendered by the wife of the respondent and held defendant liable.

"The testimony is undisputed in this case that plaintiff was in need of nursing services. There is no dispute that the wife rendered such services, even though she was not a trained nurse. * * *

"We believe that under the authority cited that the employer knew of the injuries from the accident; that he was aware that nursing services were necessary for the proper care and treatment of this claimant and that when it failed to provide such services or failed to offer to provide such services it became liable for such necessary nursing."

In Groce v. Pyle, Mo.App., 315 S.W.2d 482, a 64-year-old employee fell nine feet to a concrete floor which caused injuries and a subsequent heart condition. Claimant's wife quit a dollar-an-hour poultry house job to nurse her husband. Her services, which were similar but not as extensive as those of Mrs. Stephens, included getting up at night to tend her husband, giving artificial respiration, rubbing arms and neck, and bathing his face with cold cloths. The question on appeal, as here, was whether an award for nursing services to claimant's wife was supported in the record, and the court, again directly in point, held, l. c. 491 [11, 12]: "There can be no doubt * * * but that there was competent and substantial evidence showing that claimant required care above and beyond the services ordinarily performed by a wife for a husband, and that he has a need for general nursing services. Appellants concede that he is permanently partially disabled. There is evidence to the effect that he is a very sick man with a serious heart condition; that he is unable to stand, walk and get around satisfactorily; that he becomes numb and in extreme pain, has frequent blackouts and would fall if unattended; that it is necessary for his wife to be with him constantly, and especially at night to care for him because of his condition."

Appellants' contention II is that, even so, the award for nursing services following the initial 90-day period should be set aside because claimant failed to obtain a special order for such services as required by Section 287.140, V.A.M.S., and there is no competent and substantial evidence to support the commission's finding that the requirement was waived.

Respondent admits that he did not procure a special order for services after the initial 90-day period following his injury; however, the cases hold that the statutory requirement of special order may be waived, e. g., Curtin v. Zerbst Pharmacal Co., 229 Mo.App. 82, 72 S.W.2d 152, 155: "As to such additional treatment * * *, as the commission is clothed with jurisdiction to hear and determine as to the same, the doctrine of waiver applies to the provision for special order. * * * and if it can be fairly inferred from the facts and circumstances in evidence that the employer has waived the condition, then the finding of fact by the commission becomes conclusive"; Blahut v. Liberty Creamery Co., Mo.App., 145 S.W.2d 506, 509 [2]: "Furthermore, by furnishing such medical aid after the first ninety days following the injury, without the special order provided for in (Section 287.140), the employer must be held to have waived the requirement of such special order * * *. Johnson v. Kruckemeyer, 224 Mo.App. 351, 29 S.W. 2d 730, 733, 735; Curtin v. Zerbst Pharmacal Co., 229 Mo.App. 82, 72 S.W.2d 152, 155"; Morrow v. Orscheln Bros. Truck Lines, 235 Mo.App. 1166, 151 S.W.2d 138, 142 [2]: "* * * where the employer furnishes such medical aid, after the first 90 days following the injury, without the special order provided by (Section 287.-140), the employer must be held to have waived the requirement of such an order * * *. McEneny v. S. S. Kresge Co., 333 Mo. 817, 62 S.W.2d 1067; Blahut v. Liberty Creamery Co., Mo.App., 145 S.W. 2d 506."

In keeping with the requirement, Section 287.140, supra, that the employer provide medical, surgical, hospital treatment, nursing, ambulance, and medicine, etc., there is no question that the employer and insurer authorized comprehensive medical care and treatment for Mr. Stephens immediately following his injuries; that they selected doctors associated with the Smith-Glynn-Callaway Clinic for that purpose; that the extent of injuries was known at the outset; that the doctors in rendering their services hospitalized the employee on four separate occasions to receive complete care and treatment, including nursing, for his condition; and that the employer and insurer have paid for all such charges from the injuries December 21, 1961, to and in-

cluding Dr. Sundstrom's examination of the employee for the employer and insurer August 25, 1965. This period extended considerably beyond the initial 90 days following the accident. It already has been demonstrated that the total services included nursing while in the hospital and that medical services by doctors and hospitals were furnished by the employer after the first 90 days with knowledge that nursing services were necessary to the full treatment of, and inseparable from, the conditions for which doctors and hospitalization were provided. In addition, appellants received several reports from the doctors reflecting the employee's helpless condition and their claims representative had actual knowledge of the employee's bedfast condition and need for services when he observed Mr. Stephens in his home in the Fall of 1963. Thus, there is competent and substantial evidence within the meaning of the cases interpreting Section 287.-140, supra, to support the finding in this case that the requirement of a special order to cover doctors, hospitals, or nursing was waived by the continuation of medical aid beyond the initial period.

Perhaps as good a statement as any of this proposition is in Buecker v. Roberts, Mo.App., 260 S.W.2d 325, 327 [2]: "The act provides that in addition to all other compensation, the employer shall provide such medical, surgical, and hospital treatment as may reasonably be required for the first ninety days after the injury. In other words, for the first ninety days the employer is under an absolute duty to furnish medical aid. After ninety days he is only obliged to provide such additional similar treatment as the commission, by special order, may determine to be necessary. Section 287.140(1). But if, after the expiration of ninety days, and without the entry of a special order by the commission, he none the less supplies his injured employee with further medical aid, not only does he waive the lack of such a special order, but the aid he furnishes constitutes a payment on account of the injury as re-

gards the running of the period of limitation upon the filing of a claim for compensation. Morrow v. Orscheln Bros. Truck Lines, supra (235 Mo.App. 1166, 151 S.W. 2d 138); * * * Blahut v. Liberty Creamery Co., Mo.App., 145 S.W.2d 506." See also Parker v. St. Louis Car Co., Mo. App., 145 S.W.2d 482, where the employer argued that it was not required to pay for aid furnished after the initial period because no special order had been made by the commission. As in this case, it was undisputed that the employer did not stand on that provision of the law but did furnish medical aid after the initial period without any special order. "The employer thereby waived the requirement of a special order by the Commission, which it had a right to do if it saw fit to do so. Johnson v. Kruckemeyer, 224 Mo.App. 351, 29 S.W.2d 730, 733, 735; Curtin v. Zerbst Pharmacal Co., 229 Mo.App. 82, 72 S.W.2d 152, 155. Having waived that requirement at the time of furnishing such medical aid, the employer cannot now be heard to complain on that ground." 145 S.W.2d 1. c. 484 [2]. Appellants' argument makes frequent reference to the lack of a request of the employer and insurer by the employee or his wife that nursing services be provided, but this is not controlling because appellants were found to have been aware of claimant's need of such services irrespective of such request from claimant or his wife. Such request would simply be additional evidence of knowledge.

■ With respect to contention III, appellants' argument is that the award for future nursing care is based only on speculation and guesswork and should be set aside because "the sole medical evidence is the testimony of Dr. Frank D. Sundstrom * * * (who) indicated that there was no course of medical treatment being recommended by him as of the time of the doctor's final examination on August 28, 1967, and that the employee had reached his maximum degree of recovery by that time. * * * 'the employee can do quite well at this time with the exception of dressing

himself.'" The doctor also felt that the need of nursing home care or institutional care "would have to be quite speculative."

Of course, an award based on guesswork and speculation cannot stand, Brown v. R. J. Brown Co., 351 Mo. 557, 172 S.W.2d 645, 646 [1–3]; Wessel v. St. Louis Car Co., 235 Mo.App. 499, 136 S.W.2d 388, 390 [1]; Muesenfechter v. St. Louis Car Co., Mo.App., 139 S.W.2d 1102, 1106 [9]; Voss v. Merchant's Dairy Co., Mo.App., 373 S. W.2d 662, 664–665 [4]; however, appellants' argument overlooks the competent and substantial evidence to support the commission's finding on the need of nursing care. It should be noted before reciting that evidence that Dr. Sundstrom's testimony related only to the matter of further "medical treatment" and did not bear upon whether Mr. Stephens was in a helpless condition requiring nursing care, aid and assistance in daily living. Likewise, his opinion was asked on the need of nursing home or institutional care as opposed to the matter of care, treatment and aid which he might need in his helpless condition in his own home.

In support of the award, Mrs. Stephens stated that at the time of the hearing by the referee (June 18, 1968), her husband was able to be up about half a day, he could not walk or go to the bathroom without his braces and she had to put them on and take them off for him. He could not dress himself, and she had to tend his feet, hair and teeth, help him shave, stand by him to keep him from falling while showering, give medication, assist him on stairs and inclines and to keep his balance when walking. She spent nearly three fourths of her time caring for and assisting her husband and could not be out of the home to work. These circumstances in support of the finding of respondent's need of part-time care when not in a hospital become additionally persuasive when considered with Dr. Sundstrom's final report to appellants that Mr. Stephens, as of August 25, 1965, had "reached a plateau in his improvement and because of the combined abnormalities, his sitting ability is extremely limited as is his ambulatory ability. * * * considering the combination of abnormalities and their resultant bodily malfunctions, * * * this patient has a 75% permanent partial[1] disability of the body as a whole." The quotation from Groce v. Pyle, supra, is ample legal support for this similar factual support of the award for future nursing services "above and beyond the services ordinarily performed by a wife." It might be said in passing that if appellants dislike the idea of compensating claimant for such services when rendered by his wife, they might have exercised their privilege of purchasing them for him "in the first instance," Slider v. Brown Shoe Co., supra, from someone in the practical nursing profession.

■ Finally, appellants contend, IV, that the future award should be set aside because there is no competent and substantial evidence that any nursing treatment has been needed since August 25, 1965, to "cure and relieve" the employee. The argument is that since further "medical treatment" was not indicated after August 25, 1965, there could be no nursing "to cure and relieve" from the effects of the injury. They would support their argument with Tirocchi v. United States Rubber Co., R.I., 224 A.2d 387, where the injured employee's husband helped her with personal and household tasks and compensation for such services was sought. The Rhode Island court observed, l. c. 394, that the nature of the services sought would relieve the employee from the effects of her injury but held against her, l. c. 395, on the ground the relief sought was not medical in nature. The case is not in point because, as compared to the extraordinary services rendered by Mrs. Stephens, Mrs. Tirocchi wanted "the assistance of a worker in the home whose duties would

---

1. Appellants concede that Mr. Stephens is totally and permanently disabled.

admittedly be those of a combination housekeeper and personal maid." 224 A. 2d l. c. 393. In other words, the aid sought would simply "relieve" her of certain household duties. By contrast, the services performed by Mrs. Stephens for her husband do not "relieve" him of tasks he would or could otherwise perform but are "above and beyond the services ordinarily performed by a wife for a husband," Groce v. Pyle, supra, 315 S.W.2d l. c. 491, and relieve Mr. Stephens from his otherwise helpless bedfast condition. Missouri has recognized that type of services as within the meaning given to the statute, Section 287.140, supra. In Brollier v. Van Alstine, 236 Mo.App. 1233, 163 S.W.2d 109, the insurer contended that the statutory terms "cure" and "relieve" were used in the conjunctive and that if the employee could not be "cured" of his injuries the commission lacked power to order the insurer to furnish treatment to "relieve" him. The court held: " * * * such a position is untenable. The two words do not have identical meaning and the Legislature must have intended that both words should be given effect, else it would not have used both. * * * The words as used in the statute must be given their usual and well recognized meaning, and the statute must be liberally construed. Claimant * * * may be 'relieved,' that is, given comfort, succor, aid, help, and ease, in his suffering; but he cannot be 'cured' or 'restored to soundness' after his injury." 163 S.W.2d 1. c. 115 [7, 8]. So it is with Mr. Stephens— he is entitled to nursing services which "relieve" him in his otherwise helpless bedfast condition even though there is no further course of "medical" treatment in anticipation of a "cure" or restoration to soundness.

Accordingly, since the award is supported by competent and substantial evidence in all respects and is not contrary to the overwhelming weight of evidence, it, and the judgment affirming it, must be and are affirmed.

HOUSER, C., concurs.

WELBORN, C., not sitting.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

SEILER, P. J., and HOLMAN, J., concur.

STORCKMAN, J., absent.